UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VAN JENKINS,

        Plaintiff,

v.

        Case No.  5:14-cv-11812
        District Judge Judith E. Levy
        Magistrate Judge Anthony P. Patti

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DE 20, 25)

**I.   RECOMMENDATION**: The Court should grant Defendants Fox, Saxton, Bradley, Edwards, White, and Beam's Motions for Summary Judgment for Plaintiff's failure to exhaust administrative remedies prior to initiating this lawsuit. (DE 20 and 25.)

**II.   REPORT**

   **A.   Background**

      **1.   Procedural Background**

Plaintiff Van Jenkins (#172475) is currently incarcerated at the Michigan Department of Corrections' Parnall Correctional Facility in Jackson, Michigan.

On December 5, 2013, while housed at the Charles Egeler Reception & Guidance Center, Plaintiff filed the instant lawsuit in the Western District of Michigan. (DE 1, Case No. 1:13-cv-1306 (W.D. Mich.)).

On February 26, 2014, Plaintiff filed an Amended Complaint against the Michigan Department of Corrections ("MDOC"), the Michigan Parole Board and the MDOC's Absconder Recovery Unit, as well as Patrick M. Clark (Parole Agent), Douglas Fox (Detroit Reentry Center ("RRF") Property Room Officer), Erika T. Saxton (Probation Agent), Clinton Bradley (Absconder Recovery Unit Officer), Gary Edwards (RRF Parole Agent), Charles Sinclair (Field Operations Administration ("FOA") Deputy Director), Michelle Risely (FOA Office of Parole & Probation Services), Fern Beam (RRF Property Room Sargent), Annette White (RRF Grievance Coordinator), Adrian L. Green (MDOC Hearing Examiner), and unidentified officers, agents, and staff. (DE 3.)

On May 2, 2014, Judge Bell entered an opinion (DE 4) and an order of partial dismissal and transfer (DE 5) denying Plaintiff's request for preliminary relief, dismissing with prejudice Plaintiff's claims under 18 U.S.C. §§ 241, 242, and the Americans with Disabilities Act, 42 U.S.C. § 12132, dismissing with prejudice Plaintiff's claims under 42 U.S.C. § 1983 against Defendants MDOC, Michigan Parole Board, Absconder Recovery Unit, Sinclair, and Risely, dismissing without prejudice Plaintiff's state-law claims, if any, against defendants MDOC,

Michigan Parole Board, Absconder Recovery Unit, Sinclair, and Risely, and transferring the remainder of the action to the Eastern District of Michigan. Within the opinion, Judge Bell noted that the Court had not reviewed Plaintiff's remaining claims against Clark, Fox, Saxton, Bradley, Edwards, Beam, White, Green or unknown parties under the Prison Litigation Reform Act ("PLRA"). (DE 4 at 16 n.4.)[1]

On May 29, 2014, Plaintiff filed an appeal of Judge Bell's opinion and order. On June 13, 2014, the Sixth Circuit entered an order dismissing the appeal as it applies to the partial dismissal and the portion of the order transferring the case and providing that only issues regarding the denial of the preliminary injunction may be raised on appeal. *See* Case No. 14-1675 (6th Cir.).

## 2. Factual Background

Plaintiff's allegations stem from his experiences at Southwest District Probation Office in Lincoln Park, Michigan and at the Detroit Reentry Center. On September 13, 2013, Plaintiff reported to the Southwest District Probation Office for a Presentence Investigation Interview. (Saxton Aff. ¶ 3, DE 20-2.) Plaintiff asserts that he was assaulted by three officers when he arrived at the Southwest District Probation office. He contends that the officers "grabb[ed] him" and

---

[1] This case was reassigned from Judge Roberts to Judge Levy. (DE 8.) Judge Levy originally referred this case to Magistrate Judge Komives for pretrial matters. (DE 17.) However, on January 13, 2015, the case was reassigned to me, and Judge Levy immediately referred all pretrial matters to me. (DE 42.)

3

"violently twist[ed] his body," which exacerbated his hypertension disorder and spina bifda. (Amended Compl. ¶ 10, DE 3-1.) He further alleges that he was handcuffed too tightly. (Id.)

Plaintiff was detained at the Probation Office because he had an active warrant. (Saxton Aff. ¶ 3, DE 20-2.) As a result, Defendant Bradly transported Plaintiff to the Detroit Reentry Center. (Bradley Aff. ¶ 3.) Plaintiff contends that, when he arrived at the Detroit Reentry Center, Defendants stole his property, improperly denied him the assistance of an attorney at his preliminary parole violation hearing, and failed to respond in a timely manner to his grievance about these incidents. (Id. at ¶¶ 19, 22-28.)

### 3. The Instant Motions[2]

Defendants Fox, Saxton, Bradley, Edwards, and White filed their Motion for Summary Judgment on July 15, 2014 ("First MSJ"). (DE 20.) On July 22, 2014, the Court ordered Plaintiff to respond to the first MSJ by August 21, 2014. (DE 21.) Thereafter, Plaintiff sought an extension of time, until September 24, 2014, in which to respond to the first MSJ. The Court granted his request on August 21, 2014. (DE 26.) Defendant Fern Beam filed her Motion for Summary Judgment on

---

[2] In addition to the instant Motions for Summary Judgment, several other items remain pending before the Court, including Defendants' Motion to Quash Suboena (DE 29, 30, 34), Plaintiff's Motion for Contempt (DE 36), Defendant Green's Motion for Summary Judgment (DE 39), and Plaintiff's Response (DE 41).

August 21, 2014 ("Second MSJ").[3] (DE 25.) On August 25, 2014, the Court ordered Plaintiff to respond to the second MSJ by September 24, 2014. (DE 27.) On September 25, 2014, Plaintiff filed a Notice of Delay by MDOC. (DE 32.) In his Notice, Plaintiff asserts that his time in the law library was cut short and for various reasons, including his then-pending appeal, he would not be able to mail out the response until the day of the deadline. (DE 32 at 4.) To date, Plaintiff has not provided a response to either motion.[4]

In their Motions, Defendants assert that they are entitled to summary judgment because Plaintiff has not exhausted his administrative remedies. Specifically, they argue that Plaintiff's grievances related to the events in his Amended Complaint were not fully exhausted until May 8 and May 23, 2014, after Plaintiff filed his Complaint in the instant case. Alternatively, the Defendants assert that they are entitled to qualified immunity because Plaintiff failed to adduce sufficient evidence that they violated a clearly established law.

---

[3] In her Motion for Summary Judgment, Defendant Beam adopts and incorporates the arguments made by her co-defendants and the Motions for Summary Judgment will be considered together throughout this Report and Recommendation.

[4] Plaintiff filed a Response to a subsequent Motion for Summary Judgment by Defendant Green on December 4, 2014. (DE 41.) He makes no indication, however, that it was intended to be a drastically late response to the instant Motions.

### B. <u>Standard</u>

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

"[E]even where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). However,

> In the absence of a response, the court must review carefully those portions of the submitted evidence designated by the moving party. Neither the trial nor appellate court, however, will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are "uncontroverted."

*Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992); *see also*

*F.T.C.*, 767 F.3d at 630 n.11.

### C. Discussion

The Undersigned will address each of Defendants' arguments in turn.

#### 1. Exhaustion of Administrative Remedies

##### a. Exhaustion under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The

prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

### b. <u>Grievance Procedures at the MDOC</u>

Pursuant to its Policy Directive dated July, 9, 2007, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to

resolve any issue with the staff member involved within two days of becoming aware of a grievable issue. (Grievance Policy Directive ¶ P, DE 20-7.) If the issues are not resolved within five days, the inmate may file a Step 1 grievance using the appropriate form. The inmate should receive a response within fifteen days of filing his or her grievance. If the inmate is dissatisfied with the disposition of the grievance, or does not receive a response ten days after the due date, he or she may file a Step II grievance using the appropriate form. (Id. at ¶ BB.) Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response for ten days after the response was due, he or she may file a Step III grievance. (Id. at ¶ FF.) Step III grievances are "logged on a computerized grievance tracking system." (Id. at ¶ GG.) The matter is fully exhausted after the disposition of the Step III grievance. *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

### c. **Plaintiff's Step I Grievance**

Plaintiff mentions the grievance procedure only once in his Amended Complaint. He indicates that he wrote out a grievance on September 13, 2013, but that the required forms were not available, and he did not receive a response until October 28, 2013. (Amended Compl. ¶ 19, DE 3-1.) Defendant Annette White, whose primary job duties are to process Step I grievances, averred that she

10

received a Step I grievance from Plaintiff dated September 18, 2013, not September 13, 2013. (White Aff. ¶ 3.) She indicates that she provided a response on October 28, 2013, the day she received the form, because the grievance had been returned to Plaintiff for failure to comply with the policy. (Id.) Specifically, Plaintiff should have sent the grievance to the Lincoln Park Parole Office, where the events occurred, and he instead sent it to the Detroit Reentry Center. (Id.) According to Plaintiff's version of the facts, the response to Plaintiff's Step I grievance was technically late. According to the Policy Directive, Plaintiff could have filed a Step II grievance ten days after he should have received a response. Plaintiff does not indicate that he filed any such grievance prior to filing the instant action, nor is there any indication in the record of a Step II grievance having been pursued.

        **d.**    **Plaintiff Did Not Comply with the MDOC Policy by Failing to Pursue a Step III Grievance Before Filing his Lawsuit**

Here, Defendants assert that Plaintiff failed to exhaust his administrative remedies under the MDOC policy until months after filing his Complaint. Defendants provide a printout of the computerized tracking system for Step III grievances. This document shows that Plaintiff has filed a total of six Step III grievances on November 8, 2009, November 12, 2010, January 27, 2011, May 8, 2014, and May 23, 2014. (DE 20-8.) Because the events giving rise to Plaintiff's

11

Complaint occurred in September 2013, the grievances dated from 2009-2011 are unrelated to the instant action. The May 8, 2014 and May 23, 2014 grievances, however, could be related to Plaintiff's Amended Complaint.[5] Plaintiff filed the instant action in federal court on December 5, 2013. (DE 1.) He filed his Amended Complaint on February 26, 2014. (DE 3.) Plaintiff's Step III grievances were therefore not filed until months after he filed his Amended Complaint, assuming that they even relate to the allegations being made in the case at bar.

### e. The Record Does Not Otherwise Reveal an Exhaustion of Administrative Remedies

The Undersigned finds no evidence to contradict Defendants' assertions. As noted above, Plaintiff did not provide a response to the instant Motions. While he is not required to specially plead exhaustion in his Complaint, Plaintiff does not make even a cursory statement that he exhausted his administrative remedies pursuant to MDOC policy prior to filing his lawsuit. Although the Court is not required to *sua sponte* comb the record to advocate for a non-responding party, the Undersigned reviewed Plaintiff's Response to Defendant Adrian Green's Motion for Summary Judgment for some sign that Plaintiff attempted to exhaust his

---

[5] Curiously, Defendants provide several of Plaintiff's grievances that made it to Step III, but do not provide those filed in May 2014. The Undersigned will therefore construe the May 2014 records in favor of Plaintiff and assume that they address the incidents outlined in his Amended Complaint.

administrative remedies.[6] (DE 41.) There is no evidence in the record to indicate that Plaintiff exhausted his administrative remedies before filing his Amended Complaint.

To be sure, Defendants bear the burden of proving that Plaintiff failed to exhaust his administrative remedies prior to filing the instant lawsuit. In order to defeat the Motions, Plaintiff must proffer competent evidence to create a genuine dispute of material fact as to whether he exhausted the remedies as set out by MDOC. Here, Plaintiff does not address the exhaustion requirements in his pleadings or by responsive briefing, even in a conclusory manner. This is insufficient to create a genuine dispute of material fact such that his claims should survive summary judgment. *See, e.g., Alexander v. Caresource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."). Defendants Fox, Saxton, Bradley, Edwards, White, and Bean have met the burden of proving their affirmative defense. The Undersigned therefore recommends that the Court **GRANT** Defendants' Motions for Summary Judgment. (DE 20, 25.)

---

[6] In an abundance of caution, I also reviewed Plaintiff's discovery requests to the extent that they are part of the Court record (DE 29, 30, 34, and 36) and found no outstanding discovery requests relating to exhaustion of his administrative remedies, which would render a decision on this point premature.

### 2. **<u>Qualified Immunity</u>**

In light of the foregoing conclusion that Defendants are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies, this Report and Recommendation need not address the Defendants' alternative qualified immunity argument.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 27, 2015
          s/Anthony P. Patti
          Anthony P. Patti
          UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 27, 2015, electronically and/or by U.S. Mail.

          s/Felicia Moses acting in the absence of Michael Williams
          Case Manager for the
          Honorable Anthony P. Patti
          (313) 234-5200